NOTICE

Decision filed 07/09/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240946-U

NO. 5-24-0946

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| GREGORY D. WEEKS, | ) | Saline County. |
| | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 12-D-2 |
| | ) | |
| KIMBERLY A. WEEKS, n/k/a Kimberly A. Cabaness, | ) | Honorable |
| | ) | William J. Thurston, |
|     Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CLARKE* delivered the judgment of the court.
Justices Boie and McHaney concurred in the judgment.

**ORDER**

¶ 1　*Held*:　Where the circuit court found that there were "other unusual circumstances which made enforcement of the judgment unjust," it was not an abuse of discretion for the circuit court to set aside the due diligence requirements of section 2-1401. Additionally, the circuit court's findings that the marital settlement agreement was unconscionable were not against the manifest weight of the evidence.

¶ 2　The appellant, Gregory D. Weeks, appeals the August 26, 2024, order of the circuit court of Saline County, which granted Kimberly A. Cabaness's second motion for summary judgment on her petition to vacate the circuit court's prior judgment approving the parties' marital settlement

_____

　　*Justice Moore was originally assigned to the panel before his retirement. Justice Clarke was substituted on the panel and has listened to oral arguments and read the briefs.

1

agreement (MSA), pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      We note that in February of 2021, this court issued an order in *In re Marriage of Weeks*, 2021 IL App (5th) 200043-U (*Weeks I*) resolving a previous appeal[1] between the parties. In that order, we engaged in a detailed recitation of the facts and thus, here, we only recite those facts which are necessary for the disposition of the present appeal. Additional facts will be included in the analysis as necessary.

¶ 5      The parties were married in July of 1985 in Franklin County, Illinois. On January 6, 2012, a judgment of dissolution of marriage was entered in Saline County, a county in which neither party resided, that incorporated the parties' MSA. Almost two years later, on January 3, 2014, Kimberly filed, pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2012)), a petition to vacate the January 6, 2012, judgment. On April 10, 2017, Kimberly filed a motion for summary judgment which was denied. Later, on January 15, 2019, Kimberly filed a second motion for summary judgment, this one on the issue of unconscionability, following additional evidence being presented to the circuit court. Her motion was granted by the circuit court and became the subject of the appeal in *Weeks I*.

¶ 6      At the conclusion of the previous appeal in *Weeks I*, this court entered an order remanding the case based on a finding that summary judgment was premature due to remaining questions of fact surrounding Kimberly's due diligence in regard to her section 2-1401 petition. This court then declined to rule on the circuit court's summary determination on the issue of substantive

---

[1]Illinois Appellate Court, Fifth District, case No. 5-20-0043.

2

unconscionability of the MSA, leaving it to the circuit court to determine whether further proceedings on that issue were required.

¶ 7 On remand, the circuit court held multiple hearings across several days. During those hearings, the court received additional evidence, including testimony by both Kimberly and Gregory, testimony by Sam Beggs, who was Gregory's attorney in the initial divorce proceeding, testimony from Karen Williams who was a family friend at the time of the parties' divorce, and testimony from multiple employees of the Weeks' dealerships, including Lora Hammonds, Joseph Demaretti, H.W. Meyer, Will Zetler, Anita Bayless, and Doug Thomas. At the conclusion of the hearings, and after giving the parties every opportunity to present the evidence they wished the court to consider, the circuit court made it clear that it did not wish to deprive either party of their chance to speak, and allowed both parties to file written closing arguments with the court. It also allowed both parties to file a response to the other's closing argument.

¶ 8 On August 26, 2024, the circuit court issued its ruling in a written order which granted Kimberly's motion for summary judgment. In that order, the circuit court found that Kimberly had not exercised the due diligence required to bring a section 2-1401 petition. However, the circuit court also found that there were "other unusual circumstances" present in the case at the time of the creation of the MSA such that equity required relaxing the due diligence requirements. After finding that equity required the due diligence requirements to be relaxed, the circuit court incorporated its previous findings on the issue of unconscionability into its order, finding that the MSA's distribution of the marital estate was substantively unconscionable even without consideration of the procedure under which the agreement was reached. Gregory now appeals.

3

¶ 9                                  II. ANALYSIS

¶ 10    In order to be entitled to relief under section 2-1401 of the Code of Civil Procedure, the

section 2-1401 petitioner must prove by a preponderance of the evidence that

> "(1) a meritorious claim or defense exists; (2) the petitioner exercised due diligence in
> discovering the defense or claim in the original action; (3) despite such diligence and
> through no fault on the part of petitioner, the error of fact or valid claim or defense was not
> made apparent to the trial court at the time of the original action; and (4) petitioner
> exercised due diligence in the 2-1401 petition." *In re Marriage of Hoppe*, 220 Ill. App. 3d
> 271, 282 (1991).

¶ 11    On appeal, Gregory claims the circuit court erred in granting Kimberly section 2-1401

relief in two ways. First, Gregory argues that the circuit court erred by failing to follow our

mandate in *Weeks I*, when, as he contends, the court completely dispensed with, rather than

relaxed, the due diligence requirement. Second, he argues that the circuit court's finding that the

MSA was unconscionable was against the manifest weight of the evidence where the circuit court

failed to consider that Kimberly had received income-producing assets in the divorce, that she was

not entitled to maintenance, that she was held harmless from the parties' shared debt, and that his

assumption of the marital debt meant she received a larger portion of the marital assets than the

17.515% the circuit court found.

¶ 12    Gregory's first argument on appeal is that the circuit court committed reversible error when

it failed to follow our mandate in *Weeks I* on remand. It is well established that "where the

directives of a reviewing court are specific, a positive duty devolves upon the court to which the

cause is remanded to enter an order or decree in accordance with the directions contained in the

mandate. Precise and unambiguous directions in a mandate must be obeyed." (Internal quotation

marks omitted.) *Bond Drug Co. of Illinois v. Amoco Oil Co.*, 323 Ill. App. 3d 190, 196 (2001).

Accordingly, on remand a circuit court is required to exercise its discretion within the bounds of

the mandate, and whether it has done so is a question of law subject to review *de novo*. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351-52 (2002).

¶ 13    Accordingly, at the conclusion of the previous appeal, our mandate to the circuit court was as follows:

> "Because we find that a summary judgment was inappropriate due to material questions of fact regarding the due diligence element of Kimberly's section 2-1401 petition, or whether equity requires relaxation of the due diligence requirement, we reverse the January 31, 2020, order on that basis. Thus, we will remand this matter to the circuit court for further proceedings. We do not comment on the propriety of the circuit court's summary determination as to the issue of the substantive unconscionability of the MSA, as such a determination, standing alone, would not provide Gregory a basis for an interlocutory appeal. Thus, we will leave it to the circuit court, at this juncture, to determine whether further proceedings on that issue are warranted on remand." *In re Marriage of Weeks*, 2021 IL App (5th) 200043-U, ¶ 49.

¶ 14    On remand, after multiple hearings at which all the evidence was presented, the circuit court found that "in short," Kimberly had not exercised the due diligence required to support her section 2-1401 petition. The circuit court also found that (1) there was no evidence in the record that suggested the parties were aware of the value of the marital estate at the time of the dissolution; (2) there was no evidence in the record that either party engaged in fraudulent conduct or concealed assets; and (3) Kimberly's fears about retribution, loss of relationship with her children, and her belief that an attorney would be unable to help her did not excuse her inaction in bringing the section 2-1401 petition. Finally, the circuit court found that the "principles of equity require[d] relaxing the diligence requirement" because of the substantive unconscionability of the marital settlement agreement and the "unusual circumstances" surrounding its creation. The circuit court therefore granted Kimberly's section 2-1401 petition.

¶ 15    On appeal, Gregory contends that the circuit court, in finding that Kimberly failed to exercise due diligence, completely dispensed with, rather than relaxed, the due diligence requirement as required by our mandate, and therefore he contends the circuit court violated this

5

court's order when it granted Kimberly's section 2-1401 petition. In support of his contention, he brings to our attention *Puritan Finance Corp. v. Gumdrops, Inc.*, 101 Ill. App. 3d 888, 890 (1981), and *Bond Drug Co. of Illinois v. Amoco Oil Co*. In both of those cases, the appellate court held that strict compliance with an appellate mandate was required by the circuit court, and Gregory argues that the due diligence requirement was not simply relaxed as the circuit court says, but it was dismissed in its entirety, which, he argues, is inconsistent with our order in the previous appeal.

¶ 16 Gregory then argues that the circuit court lacked the legal authority to completely dispense with the due diligence requirements of a section 2-1401 petition under the facts of this case. Gregory first points to two cases, *Kulikowski v. Larson*, 305 Ill. App. 3d 110 (1999), and *Community 1st Credit Union v. Boswell*, 302 Ill. App. 3d 739 (1999), where the circuit court dispensed with the due diligence requirement, and he distinguishes them from the instant case on the grounds that both cases involved default judgments. Gregory then directs this court's attention to *Gonzalez v. Profile Sanding Equipment, Inc.*, further arguing that in order for the due diligence requirement to be excused, there must be a finding that the party opposing the section 2-1401 petition engaged in deceptive, unfair, or unjust conduct, and where there is not such a finding, that the lack of due diligence should not be excused or even relaxed. *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 689 (2002).

¶ 17 In response to Gregory's arguments, Kimberly argues that the circuit court complied with the mandate because it was ordered to hold a hearing to determine if the due diligence requirements were met, and if they were not, if they should be relaxed, and the circuit court did exactly that. She further contends that the circuit court's order relaxing the due diligence requirement after the hearing complied with our mandate because the circuit court had the equitable power to excuse the due diligence requirement if it found the MSA unconscionable. In support of her contention, she

6

directs this court's attention to *In re Marriage of Johnson*, 339 Ill. App. 3d 237 (2003), which is also one of the cases the circuit court relied on in reaching its decision.

¶ 18     In *Johnson*, the circuit court entered a judgment dissolving the marriage of wife and husband, and as part of the judgment, the court incorporated a separation agreement that disposed of the parties' marital property. *Johnson*, 339 Ill. App. 3d at 239. One of the terms of that agreement was that the husband would pay the wife $450 per week for 176 months to pay off a $45,000 home equity loan, in exchange for the wife releasing all claims to the husband's roughly $99,000 pension. *Johnson*, 339 Ill. App. 3d at 239-41. Almost 20 months later, the husband filed a section 2-1401 petition alleging, *inter alia*, that in light of the $450 weekly payments for 176 months, the agreement was unconscionable. *Johnson*, 339 Ill. App. 3d at 240. At the evidentiary hearing on the petition, testimony was heard that the agreement had been that the husband would pay the wife $450 per week, that the wife would receive the home, and after paying off a $45,000 home equity loan as quickly as possible, the wife would release any claim on the husband's pension. *Johnson*, 339 Ill. App. 3d at 240. The circuit court granted the section 2-1401 petition. *Johnson*, 339 Ill. App. 3d at 241.

¶ 19     On appeal, the appellate court found the agreement to be so one-sided and oppressive as to be unconscionable regardless of whether the respondent had a meaningful choice in making the agreement. *Johnson*, 339 Ill. App. 3d at 242. On the issue of due diligence, the appellate court stated:

> "It remains for us to consider whether section 2-1401 relief is unavailable because Gordon was not sufficiently diligent in bringing the relevant information to the trial court's attention at the appropriate time. There appears to be no reason Gordon could not have had an actuarial analysis of his pension performed before the judgment was entered. Thus, the record tends to show that Gordon failed to act with proper diligence. However, the requirement that a section 2-1401 petitioner demonstrate diligence is not inflexible. '[W]hen justice and fairness require, a judgment may be vacated even though the requirement of due diligence has not been satisfied.' [Citation.] We believe the

7

circumstances of this case warrant invoking this exception." *Johnson*, 339 Ill. App. 3d at 243.

¶ 20   Kimberly also brings to our attention *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986). In *Airoom*, the Illinois Supreme Court stated that one of the guiding principles in section 2-1401 petitions is that they invoke the circuit court's equitable powers; therefore, courts have not considered themselves strictly bound by precedent. *Airoom*, 114 Ill. 2d at 225. Instead, she argues that where justice and good conscience may require it, such as in the case before us, courts may vacate judgments even though due diligence has not been satisfied. See *Airoom*, 114 Ill. 2d at 225.

¶ 21   After considering the arguments before us, we find that the circuit court complied with our mandate on remand. Our instructions for the circuit court on remand were twofold. First, we instructed the circuit court to hold further proceedings on the matter of Kimberly's due diligence, and, if the circuit court thought it necessary, to hear evidence related to the issue of substantive unconscionability of the marital settlement agreement as well. The circuit court did so, holding multiple additional hearings and proceedings over a nearly three-and-one-half-year span of time.

¶ 22   Second, we instructed the circuit court to determine whether the due diligence requirements of section 2-1401 were met, and, if not, whether they should be relaxed. While Gregory argues there is a difference between relaxing and dispensing with the requirement, we do not find such a distinction exists in the case law. Therefore, we find the circuit court did as we instructed. In so doing, the circuit court relied upon *People v. Johnson* wherein, as we noted above, the appellate court, despite finding that the record "tends to show that [the 2-1401 petitioner] failed to act with proper diligence," found that the circumstances of the case warranted invoking the exception to the due diligence requirement, and held that equity, justice, and good conscience required relaxing the due diligence requirement. *Johnson*, 339 Ill. App. 3d at 243.

8

¶ 23    In so relying, the circuit court, citing the mandate of this court's remand to resolve the material questions of fact regarding the due diligence element of the Kimberly's section 2-1401 petition, including "whether equity requires relaxation of the due diligence requirement" (*Weeks*, 2021 IL App (5th) 200043-U, ¶ 49), specifically considered and examined the circumstances and conditions under which the January 6, 2012, MSA was executed and the judgment of dissolution was entered. The circuit court found noteworthy the "lightning speed" in which the matter proceeded to adjudication, the fact that the negotiations took place at Gregory's attorney's office, that Kimberly remained without counsel during the entire process of drafting the marital settlement and proving up the dissolution, and that the entire dissolution process took four business days.

¶ 24    The circuit court further considered the economic circumstances of the parties that resulted from the MSA, and the parties' relative economic positions immediately following the making of the MSA. The circuit court found it significant that Kimberly received no income-producing assets, no provision for maintenance, that she left her job (and therefore her health insurance), and noted that it was clear from the record that "nobody familiar with the parties had any idea as to their assets or as to the value of the business or the marital estate. This included [Gregory's] attorney, the original trial judge, the current trial judge, and other witnesses." The circuit court further found that "nothing in the record indicates that the parties had any idea of the value of the marital estate at the time prior to the dissolution, at the time of the dissolution, and in the years after the dissolution."

¶ 25    The circuit court found that Kimberly's stated fear of retribution from Gregory, her description of her mental state as "all over" for a period of time after the dissolution, and her belief that after the divorce an attorney would not be able to help, did not excuse her inaction between the time of the entry of the judgment and when she contacted an attorney about her case

9

"approximately 18 months later." Thus, the circuit court found she had not exercised due diligence. However, the circuit court, after noting that both parties "acknowledge that the requirement that a party seeking relief under section 2-1401 must demonstrate due diligence is not inflexible," determined the circumstances and conditions under which the January 6, 2012, MSA was executed and the judgment of dissolution of marriage was entered, constituted "other unusual circumstances which made enforcement of the judgment unjust," finding instructive *European Tanspa, Inc. v. Shader*, 242 Ill. App. 3d 103, 108 (1993).

¶ 26    While finding that the record did not contain evidence of fraudulent conduct or concealment of assets by either party, the circuit court noted "a significant disparity in the division of the assets of the marital estate," and further noted the existence of other "unusual circumstances" including

> "(1) the speed in which the dissolution was filed, proved up, and judgment entered; (2) the parties, as Franklin County, Illinois residents, filing their dissolution case in Saline County; (3) the execution of the MSA documents in [Gregory's] attorney's office, while [Kimberly] proceeded *pro se*; (4) the parties['] total lack of knowledge of the value of their assets; (5) [Gregory's] repeated statements to [Kimberly] that if there was no agreement 'the attorneys would get all the money,' (which underscores the complexities in attempting to value the parties business and personal assets); and (6) [Gregory's] statements to [Kimberly] to 'take the deal, it's a f*** good deal', and statements to Karen Williams asking her why she was telling [Kimberly] not to take the deal. To that end, the court notes the nature of the parties' businesses, as automobile dealers, and the manner in which transactions are made. In that light, [t]he terms 'making a deal' or 'getting a good deal' would not be unusual."

¶ 27    Ultimately, the circuit court, after considering the "unusual circumstances" of the case, determined that the "principles of equity require[d] relaxing the due diligence requirement." Because whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, a court of review is justified in disturbing the judgment of the circuit court only if it finds that the court abused its discretion. *Airoom*, 114 Ill. 2d at 221. We agree with the circuit court that the circumstances surrounding the creation of the MSA and the entry of the Judgment of Dissolution in this case are unusual. We also find that the circumstances surrounding the creation of the MSA, and the entry of the judgment of dissolution, are patently unconscionable. Therefore, we cannot say that the circuit court's finding that the "principles of equity require relaxing the due diligence requirement" was an abuse of discretion. Nor can we find, because the circuit court followed our directions on remand, that the circuit court failed to comply with our mandate in *Weeks I*.

¶ 28    Gregory's second argument on appeal is that the circuit court's finding that the MSA was unconscionable, and therefore that Kimberly had a meritorious defense to the original judgment, was in error. Specifically, he argues the circuit court failed to consider that Kimberly had received income-producing assets, that she was not entitled to maintenance, that she was held harmless from the parties' shared debt, and that his assumption of the marital debt meant she received a larger portion of the marital assets than it first appears.

¶ 29    Additionally, Gregory argues that the proper standard of review for an order granting a section 2-1401 petition following an evidentiary hearing is a manifest weight of the evidence standard, citing *In re Marriage of Roepenack*, 2012 IL App (3d) 110198, ¶¶ 34-35, *abrogated on other grounds* (the Illinois Supreme Court has previously indicated in *dicta* that "the abuse of discretion standard of review 'does not match up with' disposition of a section 2-1401 petition

11

following an evidentiary hearing" and so the *Roepenack* court held that "[a]ccordingly, we will review the trial court's judgment under the manifest weight of the evidence standard of review"). Meanwhile, Kimberly argues that the standard of review applicable here is abuse of discretion, citing *Airoom*, because a section 2-1401 petition is addressed to the court's discretion to use equitable powers. We find, however, that we need not settle this dispute because, under either standard, the outcome is the same; thus, we will proceed under the less deferential manifest weight standard. See *In re Marriage of Arjmand*, 2013 IL App (2d) 120639, ¶ 32. A determination is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *Arjmand*, 2013 IL App (2d) 120639, ¶ 32.

¶ 30    Under section 2-1401, a marital settlement agreement that is unconscionable may be set aside. *In re Marriage of Callahan*, 2013 IL App (1st) 113751, ¶ 17. Unconscionability has been equated with one-sidedness or oppressiveness, and an unconscionable bargain has been defined as one no man in his right senses would make and which no fair and honest man would accept. *In re Marriage of Brandt*, 140 Ill. App. 3d 1019, 1021 (1986). It is well settled that a marital settlement agreement is unconscionable if there is an absence of a meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Callahan*, 2013 IL App (1st) 113751, ¶ 20. This general definition encompasses both procedural unconscionability, which involves impropriety during the process of forming a contract that deprives a party of meaningful choice, and substantive unconscionability, which involves a clause or term in the contract that is one-sided or harsh. *Callahan*, 2013 IL App (1st) 113751, ¶ 20. In certain circumstances, however, an agreement may be so one-sided or oppressive that it can be found unconscionable without taking into account the conditions under which the agreement was

12

made, or whether the complaining party had a meaningful choice. See *Callahan*, 2013 IL App (1st) 113751, ¶ 20; *Johnson*, 339 Ill. App. 3d at 242.

¶ 31   The unconscionability of the agreement must be proven by clear and convincing evidence. *In re Marriage of Stoker*, 2021 IL App (5th) 200301, ¶ 69. Further, when a party seeks to vacate or modify a property settlement incorporated in a divorce decree, all presumptions are in favor of the validity of the settlement. *In re Marriage of Hamm-Smith*, 261 Ill. App. 3d 209, 214 (1994). A court should not set aside a settlement agreement merely because one party has second thoughts. *Hamm-Smith*, 261 Ill. App. 3d at 214. When determining whether the agreement was unconscionable, the circuit court is to assess the facts existing immediately after the agreement is made. *Stoker*, 2021 IL App (5th) 200301, ¶ 69.

¶ 32   Here, following the conclusion of the hearings and parties' submission of their written closing arguments, the circuit court incorporated its previous findings of fact from its January 31, 2020, order.[2] In that order, after summarizing the evidence the court had reviewed, the court found that in

> "[v]iewing the evidence in a light most favorable to [Gregory], using the financial statement of the parties as of December 31, 2010, adjusting said statement to reflect [Gregory's] newly revised dealership values, giving no consideration to increased net worth in the form of cash held in various bank accounts submitted by [Kimberly] during 2011, and giving no consideration to income earned by the parties in 2011, the court finds that for purposes of summary judgment, the value of the marital estate on January 6, 2012, was, at the very minimum, $11,326,317.00. Of this amount, [Kimberly] received $1,984,024.90, or 17.516% of the value of the marital estate."

The court further found, after specifically considering the circumstances and conditions under which the January 6, 2012, MSA was made, the economic circumstances of the parties that resulted from the MSA, and the parties' relative economic positions immediately following the making of

---

[2]We note that in *Weeks I* we did not overturn the circuit court's ruling or findings of fact as to the issue of unconscionability but instead left it up to the circuit court whether to reopen that particular issue, which, from our review of the record, the circuit court declined to do.

the MSA, that "[i]t is significant that [Kimberly] received no income producing assets, no provision for maintenance, and was leaving her job with the dealership." Therefore, the court ultimately concluded that "the agreement is so one-sided and oppressive that it is unconscionable even without taking into account the conditions under which the agreement was made, or whether [Kimberly] had a meaningful choice, the parties' disparity in income, and unequal earning potential." The court further found that the MSA "does not comply with section 503(d) that the marital property be divided in just proportions."

¶ 33    Having reviewed the record in this case, we cannot say that the circuit court's findings of fact or the circuit court's conclusion that the MSA was unconscionable were against the manifest weight of the evidence. While Gregory argues that certain findings of fact by the circuit court were against the manifest weight of the evidence, we find the opposite conclusion is clearly evident.

¶ 34    We first address Gregory's contention that the circuit court's finding—that Kimberly received no income-producing assets—is against the manifest weight of the evidence. The circuit court did not base its finding on whether the lump-sum funds awarded to Kimberly could theoretically generate income if later invested; rather, it found that the assets she actually received consisted of a $1.8 million cash payment, real property valued at $58,000, a $50,000 vehicle, a retirement account valued at $76,024.90, and certain personal items. The court further determined that none of these items, as awarded, constituted an ongoing or established source of income at the time of dissolution. That finding is supported by the record and reflects a reasonable assessment of the nature of the property distributed. Accordingly, it is not against the manifest weight of the evidence.

¶ 35    We also reject Gregory's argument that the circuit court erred by considering the parties' waiver of maintenance without first determining whether, or in what amount, maintenance would

14

have been awarded. The circuit was not making a maintenance determination; it referred to the waiver only as one circumstance informing its broader assessment of whether the agreement was unconscionable. In evaluating unconscionability, the circuit court was permitted to consider the practical effect of the waiver in light of the parties' financial circumstances without conducting a separate maintenance analysis. Moreover, the authority Gregory relies on in support of his position only requires that a court consider the statutory factors when resolving an actual maintenance request and expressly states that "specific findings as to the reasons for its decisions" are not required. (Internal quotation marks omitted.) *In re Marriage of Bradley*, 2011 IL App (4th) 110392, ¶ 36. Nothing in that decision supports Gregory's claim that the court was required to calculate maintenance before taking the waiver into account.

¶ 36    Finally, in regard to Gregory's final two arguments, that the circuit court erred in not considering his assumption of all the marital debt, and in not considering how the assumption of all the marital debt left Kimberly with a larger share of the marital estate, we note that Gregory does not direct our attention to the amount of personal credit card debt he assumed or to how much change it would make, only that he assumed it. Second, we note that while Gregory directs our attention to business debt he assumed full responsibility for in the marital settlement agreement, the record shows these debts, though personally guaranteed by the marital estate, were primarily operational business liabilities typical of auto-dealership floor-plan financing for car inventory, not the type of personal, post-divorce obligations that drive the unconscionability inquiry. Under Illinois law, that inquiry focuses on the parties' economic circumstances immediately after the agreement (*Stoker*, 2021 IL App (5th) 200301, ¶ 69), not on the internal financing structure or leverage of an ongoing business. Here, the court used Gregory's own valuation numbers, viewed in his favor, and still concluded that awarding Kimberly only 17.516% of the estate, along with no

15

income-producing assets, no maintenance, and the loss of health insurance, left her in an unfair and oppressive position after a 26-year marriage. Thus, the court had an independent substantive basis to find the resulting allocation unconscionable. Because the court was not required to elevate business-related debt over the parties' actual post-agreement economic circumstances, its ruling was not against the manifest weight of the evidence.

¶ 37    Because Gregory has not shown how the circuit court's findings were against the manifest weight of the evidence such that the opposite conclusions of fact were clearly evident, we find that the circuit court's finding that the marital settlement agreement was unconscionable was not against the manifest weight of the evidence. Additionally, because it was not against the manifest weight of the evidence, the circuit court's findings cannot be said to be an abuse of discretion either.

¶ 38                                    III. CONCLUSION

¶ 39    Where the circuit court found that there were "other unusual circumstances which made enforcement of the judgment unjust," it was not an abuse of discretion for the circuit court to set aside the due diligence requirements of section 2-1401 under the circuit court's equitable powers. Additionally, the circuit court's finding that the marital settlement agreement was unconscionable was not against the manifest weight of the evidence, as the opposite conclusion is not clearly evident where the circuit court found that, at the very minimum, the marital estate was worth $11,326,317, and of that amount Kimberly received $1,984,024.90, or 17.516% of the value of the marital estate, while also receiving none of the marital estate's income-producing assets, no maintenance, and was leaving her job with the dealership.

¶ 40    Affirmed.

16